Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
08/18/2017 09:09 AM CDT

- 751 -

Nebraska Supreme Court Advance Sheets
296 Nebraska Reports
COUNTY OF WEBSTER v. NEBRASKA TAX EQUAL. & REV. COMM.
Cite as 296 Neb. 751

County of Webster, appellant, v.
Nebraska Tax Equalization and
Review Commission, appellee.

___ N.W.2d ___

Filed May 26, 2017.    No. S-16-583.

1. **Taxation: Judgments: Appeal and Error.** By statute, an appellate court reviews an order from the Tax Equalization and Review Commission that is defined as a "final decision" under Neb. Rev. Stat. § 77-5019(5) (Cum. Supp. 2016) for error on the record.

2. **Judgments: Appeal and Error.** When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.

3. **Administrative Law: Words and Phrases.** An administrative agency's decision is arbitrary when it is made in disregard of the facts or circumstances without some basis which would lead a reasonable person to the same conclusion.

4. **Administrative Law.** Agency action taken in disregard of the agency's own substantive rules is also arbitrary and capricious.

5. **Taxation: Appeal and Error.** Questions of law arising during appellate review of Tax Equalization and Review Commission decisions are reviewed de novo on the record.

6. **Administrative Law: Judgments.** Whether an agency decision conforms to the law is by definition a question of law.

7. **Statutes.** Statutory interpretation presents a question of law.

8. **Statutes: Legislature: Intent.** A court gives statutory language its plain and ordinary meaning and will not look beyond the statute to determine the legislative intent when the words are plain, direct, and unambiguous.

9. ____: ____: ____. Components of a series or collection of statutes pertaining to a certain subject matter are in pari materia and should be conjunctively considered and construed to determine the intent of

- 752 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
296 NEBRASKA REPORTS
COUNTY OF WEBSTER v. NEBRASKA TAX EQUAL. & REV. COMM.
Cite as 296 Neb. 751

the Legislature, so that different provisions are consistent, harmonious, and sensible.

10. **Taxation.** The procedures for a hearing to show cause why an adjustment should not be made to a county's valuation of a class or subclass of real property are not governed by Neb. Rev. Stat. § 77-5016(4) (Cum. Supp. 2016).

11. ____. Neb. Rev. Stat. § 77-5027(3) (Cum. Supp. 2016) does not require the Property Tax Administrator to set out every property sale that the assessment division has included in its statistical analyses.

12. **Taxation: Evidence.** The Property Tax Administrator's annual narrative and statistical reports are sufficient competent evidence to support the Tax Equalization and Review Commission's equalization orders without including the sales file information for each real property transaction.

13. ____: ____. If necessary to determine the level of value and quality of assessment in a county, the Property Tax Administrator may use sales of comparable real property in market areas similar to the county or area in question or from another county as indicators of the level of value and the quality of assessment in a county.

14. **Taxation: Words and Phrases.** A comparable real property is one that is similar to the property being assessed in significant physical, functional, and location characteristics and in its contribution to value.

15. **Taxation: Evidence.** Because the Property Tax Administrator's reports are sufficient competent evidence to support a change in valuation, Neb. Rev. Stat. § 77-5026 (Reissue 2009) requires a county to demonstrate that the Tax Equalization and Review Commission should not rely on the reports.

16. **Public Officers and Employees: Presumptions.** Absent contrary evidence, public officers are presumed to faithfully perform their official duties.

Appeal from the Tax Equalization and Review Commission. Affirmed.

Sara J. Bockstadter, Webster County Attorney, for appellant.

Douglas J. Peterson, Attorney General, and L. Jay Bartel for appellee.

HEAVICAN, C.J., WRIGHT, MILLER-LERMAN, CASSEL, STACY, KELCH, and FUNKE, JJ.

- 753 -

Nebraska Supreme Court Advance Sheets
296 Nebraska Reports
COUNTY OF WEBSTER v. NEBRASKA TAX EQUAL. & REV. COMM.
Cite as 296 Neb. 751

Funke, J.

## NATURE OF CASE

Webster County appeals from a May 2016 order adjusting value issued by the Tax Equalization and Review Commission (TERC) which increased the "Majority Land Use Grass" subclass of the agricultural and horticultural land class of real property not receiving special value within Webster County in the amount of 6 percent. Webster County timely appealed. We affirm.

## BACKGROUND

Before discussing TERC's order, we explain the reporting requirements and equalization procedures that are relevant to the parties' dispute.

### Reporting and Compiling of Real Property Transactions

Every person who records a transfer of real property with a county register of deeds must file a real estate transfer statement prescribed by the Tax Commissioner.[1] The record shows that the transfer statement contains the type of transfer that was made and the type of property that was transferred. The register of deeds forwards the transfer statement to the county assessor, who processes it according to rules promulgated by Nebraska's Property Tax Administrator (Administrator) and sends the statement to the Tax Commissioner.[2] The Administrator is the chief administrative officer of the Department of Revenue's property assessment division.[3]

The record also shows that county assessors must use the transfer statements to provide the following information to the assessment division within 45 days of a recorded transfer: a nine-digit code that identifies the parcel of property, a sales

---

[1] See Neb. Rev. Stat. § 76-214 (Cum. Supp. 2016).

[2] See *id.*

[3] See Neb. Rev. Stat. § 77-701(1) (Cum. Supp. 2016).

number that the county assigns to the transaction, and a code that indicates whether the assessor has qualified the transfer as an arm's-length transaction, with or without adjustments to the sales price. The Administrator uses the transfer statement information to maintain a "sales file" of all arm's-length real property transactions in the state.[4]

By statute, to overturn a county assessor's determination about a sale's qualification as an arm's-length transaction, the assessment division must review the sale and determine that the assessor is incorrect.[5] By regulation, if an assessor fails to provide any reason to adjust a sales price or disqualify a sale, the assessment division can include the sale in the sales file without adjustment.[6] If the assessor provides a reason for an adjustment or disqualification that complies with accepted mass appraisal techniques, the property assessment division cannot include or exclude the property until it verifies the sale and determines that it does not agree with the assessor.[7] When the assessment division disagrees with the assessor, it must notify the assessor within 7 days that it will include or exclude a property sale from the sales file.[8] The assessor then has 30 days to file a protest with the Tax Commissioner.[9]

The Administrator is required to make the sales file available to county assessors, as well as the data used to develop and maintain the sales file.[10] Twice a year, the assessment division provides county assessors with rosters that show real property transactions by county and by class and subclass

---

[4] See Neb. Rev. Stat. § 77-1327(2) (Cum. Supp. 2016).

[5] See *id.*

[6] See 350 Neb. Admin. Code, ch. 12, § 003.04A (2014).

[7] See *id.*, § 003.04C.

[8] See *id.*, § 003.04D.

[9] See *id.*, § 003.04E.

[10] See, Neb. Rev. Stat. § 77-1377 (Reissue 2009); 350 Neb. Admin. Code, ch. 12, § 001.03 (2014).

- 755 -

Nebraska Supreme Court Advance Sheets
296 Nebraska Reports
COUNTY OF WEBSTER v. NEBRASKA TAX EQUAL. & REV. COMM.
Cite as 296 Neb. 751

of property.[11] An assessor can request additional rosters and additional information.[12] Upon request, the assessment division must also provide the sales file database to TERC, county boards of equalization, and county assessors for use in the assessment and equalization of property valuations.[13]

After an assessor receives a sales file roster, he or she can protest the assessment division's inclusion, exclusion, adjustment to a sale, or failure to adjust a property sale.[14] An assessor must file the protest within 30 days of receiving the roster and is entitled to a hearing before the Tax Commissioner.[15] The burden of proving that a sales roster should be altered is on the assessor.[16]

### TAX ASSESSMENT REPORTING REQUIREMENTS

Nebraska's property tax equalization laws require all county assessors to annually prepare and file "an abstract of the property assessment rolls of locally assessed real property" on forms prescribed by the Tax Commissioner.[17] The assessor must file the abstract with the Administrator,[18] and the form must include the county's assessed tax valuations for real property, by class and subclass.[19] Agricultural and horticultural land is a class that includes several subclasses, including irrigated cropland, dryland cropland, grassland, and wasteland.[20]

---

[11] See 350 Neb. Admin. Code, ch. 12, § 003.05 (2014).

[12] See *id.*

[13] See, § 77-1377; 350 Neb. Admin. Code, ch. 12, § 003.08 (2014).

[14] See 350 Neb. Admin. Code, ch. 12, § 004.01 (2014).

[15] See *id.*, §§ 004.01C and 004.01D.

[16] See *id.*, § 004.02.

[17] Neb. Rev. Stat. § 77-1514(1) (Cum. Supp. 2016).

[18] See *id.*

[19] See, *id.*; 350 Neb. Admin. Code, ch. 60, § 002.02A (2014).

[20] See Neb. Rev. Stat. §§ 77-1359 and 77-1363 (Cum. Supp. 2016).

The Administrator files annual reports regarding these abstracts with TERC. The reports contain the assessment division's statistical analyses and the Administrator's opinion on the level of value and quality of assessment for each type of real property, by class and subclass, in each county.[21] For agricultural and horticultural land, the study period of each county's sales data is 3 years.[22] The assessment division performs assessment ratio studies, based on the sales file, of a county's average level of assessment, the degree of assessment uniformity, and the overall compliance with assessment requirements for each major class.[23] The Administrator can require tax assessors and other taxing authorities to report an assessed value and other features of property assessment.[24]

### Statutory Equalization Procedures

After receiving the Administrator's reports, TERC must annually equalize the value or special value of assessed real property as submitted by the county assessors.[25] For the purpose of assessing property taxes, nonexempt agricultural and horticultural land, "as defined in section 77-1359," is valued at 75 percent of its actual value.[26]

> Actual value of real property for purposes of taxation means the market value of real property in the ordinary course of trade. . . . Actual value is the most probable price . . . that a property will bring if exposed for sale in the open market, or in an arm's length transaction, between a willing buyer and willing seller, both of whom are knowledgeable concerning all the uses to which the

---

[21] See, § 77-1327(3); Neb. Rev. Stat. § 77-5027(3) (Cum. Supp. 2016).

[22] See 350 Neb. Admin. Code, ch. 12, § 003.07A(3) (2014).

[23] § 77-1327(3).

[24] § 77-1327(5).

[25] Neb. Rev. Stat. § 77-5022 (Cum. Supp. 2016).

[26] Neb. Rev. Stat. § 77-201(2) (Cum. Supp. 2016).

- 757 -

Nebraska Supreme Court Advance Sheets
296 Nebraska Reports
COUNTY OF WEBSTER v. NEBRASKA TAX EQUAL. & REV. COMM.
Cite as 296 Neb. 751

  real property is adapted and for which the real property is capable of being used.[27]

 But under Neb. Rev. Stat. § 77-5023(1) (Reissue 2009), TERC can adjust the "value of a class or subclass of real property" in any county "so that all classes or subclasses of real property in all counties fall within an acceptable range." "An acceptable range is the percentage of variation from a standard for valuation as measured by an *established indicator of central tendency of assessment*."[28] TERC's regulations provide that "[i]ndicators of central tendency include the mean, median, and mode."[29]

 TERC's final equalization order states that it uses an "assessment/sales ratio" to measure and evaluate the level and uniformity of assessed values and that the level of value for any class or subclass is indicated by the median ratio. Under regulations promulgated by TERC and the assessment division, an assessment/sales ratio is determined by dividing a property's assessed value by its selling price.[30] For example, a property that has a tax assessment value of $59,500 and sold for $85,000 is assessed at 70 percent of its selling price. The real property transactions that are analyzed for a class or subclass are collectively referred to as a "sample."[31] The assessment division's preferred measure of central tendency in a sample is the median (middle) ratio or average of the two median ratios, which ratio is also referred to as the "level of value" for a class or subclass.[32] The division defines "level of value" to mean the "most probable overall opinion of the relationship of assessed value to actual value

---

[27] Neb. Rev. Stat. § 77-112 (Reissue 2009).

[28] § 77-5023(2) (emphasis supplied).

[29] 442 Neb. Admin. Code, ch. 9, § 002.10 (2011).

[30] See *id.*, § 002.02. See, also, 350 Neb. Admin. Code, ch. 12, § 002.04 (2014).

[31] See 350 Neb. Admin. Code, ch. 17, § 004.01 (2013).

[32] See, *id.*, § 004.01B; 350 Neb. Admin. Code, ch. 12, § 002.09 (2014).

- 758 -

Nebraska Supreme Court Advance Sheets
296 Nebraska Reports
COUNTY OF WEBSTER v. NEBRASKA TAX EQUAL. & REV. COMM.
Cite as 296 Neb. 751

for a political subdivision."[33] But "[i]f the sample of sales is not representative of the properties in the county or market area, the Division may expand its analysis to include sales in adjoining counties that share similar market and geographic characteristics."[34]

In sum, these regulations show that the "level of value" for a class or subclass operates as the "established indicator of central tendency of assessment."[35] The level of value for agricultural and horticultural land must reflect that the county valuates such property at 69 to 75 percent of actual value to fall within the acceptable range of variation.[36]

If TERC makes an initial determination that the level of value for a class or subclass does not fall within the acceptable range, then it must issue a notice to the county and set a date for a hearing.[37] "At the hearing the county assessor or other legal representatives of the county may appear and show cause why the value of a class or subclass of real property of the county should not be adjusted."[38] Under § 77-5023(3), any increase or decrease that TERC makes to a class or subclass must adjust its level of value to the midpoint of the acceptable range of variation. Under another subsection of that statute, any increase or decrease in property values that TERC makes to a subclass must result in the level of value for the entire class falling within the acceptable range of variation.[39]

With these simplified statistical methods and procedural requirements set out, we turn to the facts of this case.

---

[33] 350 Neb. Admin. Code, ch. 12, § 002.03 (2014).

[34] 350 Neb. Admin. Code, ch. 17, § 004.01B(2) (2013); § 77-5027(5).

[35] § 77-5023(2).

[36] *Id.*

[37] See Neb. Rev. Stat. § 77-5026 (Reissue 2009).

[38] *Id.*

[39] See § 77-5023(4).

- 759 -

Nebraska Supreme Court Advance Sheets
296 Nebraska Reports
COUNTY OF WEBSTER v. NEBRASKA TAX EQUAL. & REV. COMM.
Cite as 296 Neb. 751

### Administrator's Reports
### for Webster County

After the Webster County assessor filed her assessment abstracts with the Administrator, the Administrator filed with TERC the assessment division's reports and her certified opinion that the assessed valuations for the subclass of grassland should be adjusted upward in Webster County by 9 percent. The report stated that in analyzing Webster County's agricultural assessments, the assessment division considered real property in the surrounding counties of Adams, Clay, Nuckolls, Kearney, and Franklin to be comparable. The report stated that because the sales of agricultural property within Webster County were inadequate to produce a reliable analysis, sales from these surrounding counties were also included in the sample.[40] Additionally, the assessment division included three Webster County grassland transactions in the sample that had sold as grassland but were later disqualified by the assessor.

The report concluded that "[w]ithin the statistical analysis, the 80% majority land use for each class contains a sufficient number of sales." It noted that grassland values in the region, like those in most of the state, had increased in recent years. But it concluded that Webster County's values for grassland were not equalized with the surrounding counties and that the level of value for grassland was below the acceptable range of variation and did not meet generally accepted mass appraisal practices. The administrator recommended a 9-percent upward adjustment to bring the level of value for the grassland subclass up to 72 percent and "result in an overall level of value for agricultural land of 69%."

### Show Cause Order

After receiving the Administrator's recommendation, TERC issued an order for Webster County to show cause why the

---

[40] See § 77-5027(5).

- 760 -

Nebraska Supreme Court Advance Sheets
296 Nebraska Reports
COUNTY OF WEBSTER v. NEBRASKA TAX EQUAL. & REV. COMM.
Cite as 296 Neb. 751

proposed upward adjustment should not be made. The order set out the Administrator's conclusions that the level of value for grassland "by the median for the strata Majority Land Use > 80% Grass . . . is 66.07% of actual or fair market value." The order stated that the level of value for grassland was not within the acceptable range of variation to a reasonable degree of certainty and scheduled a hearing.

### Show Cause Hearing

On April 26, 2016, a hearing was held at which representatives of Webster County appeared to present evidence and argument as to why the proposed adjustments should not be made. The county assessor testified that using the State's database of property sales, she incorporated four grassland sales from other counties to determine the level of value for grassland in Webster County. She "borrowed" two grassland sales from Franklin County and two from Nuckolls County.

But the assessor disputed three other sales that the assessment division incorporated to assess the level of value for grassland in Webster County. She argued that one sale from Nuckolls County should not have been included, because part of the parcel contained tree cover. She stated that Webster County did not separate grassland from timberland; if a parcel was less than 80 percent grassland, she classified the property as wasteland.

Additionally, the assessor argued that the assessment division had improperly included two grassland sales from Webster County, sold in the first year of the 3-year study period, because the owners had substantially changed their use of the property. She stated that although the properties were grassland when purchased, within a couple of years, the owners started using the parcels as dry cropland. When she originally included these two sales as grassland in her 2016 abstracts, she concluded that the level of value for grassland in Webster County was 66.07, which is below the acceptable range of 69 to 75 percent of actual value. But she stated that

- 761 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
296 NEBRASKA REPORTS
COUNTY OF WEBSTER v. NEBRASKA TAX EQUAL. & REV. COMM.
Cite as 296 Neb. 751

she contacted the owners before preparing her final abstracts and after concluding that they had purchased the grassland properties with the intent to use the land as dry cropland, she disqualified these sales for use in the 3-year study. For the same reason, she adjusted the sales price for other grassland property sales.

In sum, the assessor determined the level of value for grassland by excluding the two grassland sales from the first year of the study period, making adjustments to other sales, and incorporating four grassland sales from other counties into her study. She concluded that the level of value for 80 percent grassland property in Webster County was 69.93 percent, which was within the acceptable range of variation. She conceded that she had not increased the value of grassland in Webster County for 2016 despite increasing it in the previous 2 years. She stated that her goal for 2016 was to "leave the farmers alone" because "we've hit them so hard for so many years." She further stated that although her level of value for grassland was low, she knew she would have to increase those valuations in 2017 when she could no longer include the oldest and lowest sales prices in the 3-year study period.

Sarah Scott, an agricultural land specialist, testified for the assessment division. The Administrator's reports showed that the division used 17 sales of grassland to evaluate the level of value for that subclass in Webster County. Scott stated that the division had incorporated four of these sales from Nuckolls County and Franklin County. She said that the difference between the assessor's analysis and the assessment division's analysis was four property transactions that the division included and the assessor did not. One was an in-kind property exchange for which the assessor had not provided a reason to disqualify it. One was the sale of a parcel in Nuckolls County that contained a wooded portion. The final two were the grassland sales that the assessor had disqualified because the owners had substantially changed the property's use to dry cropland.

- 762 -

Nebraska Supreme Court Advance Sheets
296 Nebraska Reports
COUNTY OF WEBSTER v. NEBRASKA TAX EQUAL. & REV. COMM.
Cite as 296 Neb. 751

Scott explained that even if the assessor had changed the classification of the two Webster County properties, the assessment division could still use those sales in determining the value of grassland—because at the time those properties were sold, their sale price represented the value of grassland. She stated that this determination was not automatic; it is made after consulting with the assessor. But she believed that the assessor had earlier agreed with a field liaison that the two sales were representative of the value of grassland at the time of the sales. The assessor admitted that when Scott contacted her about these sales, she did not argue with her about including them in the analysis. And she admitted that she had included the in-kind property exchange in her analysis after discussing the transaction with Scott.

Most important, she agreed that her dispute with the Administrator boiled down to three property sales: the two Webster County sales she had disqualified and the partially wooded property sale from Nuckolls County that the assessment division had incorporated. She stated that she "didn't really have a problem" with incorporating sales from Nuckolls County but pointed out that a college professor had told her Nuckolls County was not really comparable, because Webster County did not get much rain. She admitted, however, that she had not been able to find any evidence to support that belief.

Regarding the Nuckolls County parcel, Scott stated that under the assessment division's regulations, timber cover over grassland is properly classified as grassland. She stated that the parcel would still be classified as grassland even if it contained 25 percent timber. And she testified that Nuckolls County had reported it as an 80-percent grassland sale.

Finally, Scott testified that in the area of the state where Webster County is located, grassland prices had increased by 15 to 20 percent—because high commodity prices had encouraged buyers to purchase grassland and convert it to dry cropland. Because the value of grassland in Webster County did

- 763 -

Nebraska Supreme Court Advance Sheets
296 Nebraska Reports
COUNTY OF WEBSTER v. NEBRASKA TAX EQUAL. & REV. COMM.
Cite as 296 Neb. 751

not reflect this market trend, she believed the assessed values should be increased.

After this testimony, TERC received valuation analyses that it had requested from the Administrator. These analyses excluded two agricultural sales, one of which was a grassland sale. Excluding these two sales resulted in a level of value of 67.82 percent for grassland and an overall level of value of 69 percent for agricultural property. After a recess, the commissioners voted to increase the assessed value of grassland by 6 percent. One of the two commissioners explained that he was motivated to depart from the Administrator's recommendation of a 9-percent increase because of the effect of high commodity prices on the grassland property market.

### Order Adjusting Value

TERC's May 2016 order stated that the level of value for grassland in Webster County was 66.07 percent, which was the same level of value that the assessment division reached without excluding any property sales from the sample. This statement indicates that TERC chose not to exclude any properties from the sample, and nothing in its order states otherwise. But consistent with TERC's vote at the hearing, it ordered the assessor to increase Webster County's assessment valuation of grassland by 6 percent. This increase caused the level of value for "Majority Land Use Grass" to be 72 percent of fair market value and the overall level of value for agricultural and horticultural land in Webster County to be 69 percent of fair market value.

### ASSIGNMENTS OF ERROR

Webster County assigns, restated, that in adjusting the level of value for grassland upward by 6 percent, TERC improperly relied on the Administrator's statistical reports and opinion, because they (1) were not supported by competent evidence and (2) incorporated noncomparable property sales, contrary to statutory requirements.

- 764 -

Nebraska Supreme Court Advance Sheets
296 Nebraska Reports
COUNTY OF WEBSTER v. NEBRASKA TAX EQUAL. & REV. COMM.
Cite as 296 Neb. 751

## STANDARD OF REVIEW

[1,2] By statute, we review a TERC order that is defined as a "final decision" under Neb. Rev. Stat. § 77-5019(5) (Cum. Supp. 2016) for error on the record.[41] When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.[42]

[3,4] An administrative agency's decision is arbitrary when it is made in disregard of the facts or circumstances without some basis which would lead a reasonable person to the same conclusion.[43] Agency action taken in disregard of the agency's own substantive rules is also arbitrary and capricious.[44]

[5-7] Questions of law arising during appellate review of TERC decisions are reviewed de novo on the record.[45] Whether an agency decision conforms to the law is by definition a question of law.[46] Statutory interpretation presents a question of law.[47]

## ANALYSIS

Webster County contends TERC relied on a statistical analysis that was not supported by competent evidence and incorporated property sales from other counties that were not comparable to grassland in Webster County. Webster County further contends that the report did not set out information about

---

[41] See *JQH La Vista Conf. Ctr. v. Sarpy Cty. Bd. of Equal.*, 285 Neb. 120, 825 N.W.2d 447 (2013).

[42] *Id.*

[43] *Brenner v. Banner Cty. Bd. of Equal.*, 276 Neb. 275, 753 N.W.2d 802 (2008).

[44] *Blakely v. Lancaster County*, 284 Neb. 659, 825 N.W.2d 149 (2012).

[45] *Brenner, supra* note 43.

[46] *Blakely, supra* note 44.

[47] *In re Guardianship & Conservatorship of Kaiser*, 295 Neb. 532, 891 N.W.2d 84 (2017).

- 765 -

Nebraska Supreme Court Advance Sheets
296 Nebraska Reports
COUNTY OF WEBSTER v. NEBRASKA TAX EQUAL. & REV. COMM.
Cite as 296 Neb. 751

each real property transaction that was used for the statistical analysis.

### Assessment Division's Statistical and Narrative Reports Were Sufficient Competent Evidence to Support TERC's Adjustment Order

Webster County argues that under Neb. Rev. Stat. § 77-5016(4) (Cum. Supp. 2016), all records and documents on which TERC relies, apart from specified evidence, must be made part of the record, and that this statute precludes TERC from considering any other factual information or evidence. It argues that because the inclusion or exclusion of a property sale can affect the level of value analysis and require an adjustment, the assessment division must include the actual sales it relies on in the reports that it presents to TERC. Webster County further argues that TERC erred in relying on the Administrator's reports for Webster County, because those reports failed to show (1) the actual property sales that the Administrator relied on to support her opinion, (2) the selling price and assessed value of each property sale on which the Administrator relied, and (3) the geographic characteristics for each sold property on which the Administrator relied.

TERC counters that § 77-5027(3), which sets out the criteria for the Administrator's annual reports and opinions, does not require the level of specificity for which Webster County argues. TERC contends that such detail would be neither feasible nor desirable. Instead, it points to § 77-5026, under which a "county assessor or other legal representatives of the county may appear and show cause why the value of a class or subclass of real property . . . should not be adjusted" if TERC schedules an adjustment hearing.

We disagree with Webster County's interpretation of § 77-5016(4), and we agree with TERC's interpretation of §§ 77-5026 and 77-5027(3).

- 766 -

Nebraska Supreme Court Advance Sheets
296 Nebraska Reports
COUNTY OF WEBSTER v. NEBRASKA TAX EQUAL. & REV. COMM.
Cite as 296 Neb. 751

[8,9] A court gives statutory language its plain and ordinary meaning and will not look beyond the statute to determine the legislative intent when the words are plain, direct, and unambiguous.[48] Components of a series or collection of statutes pertaining to a certain subject matter are in pari materia and should be conjunctively considered and construed to determine the intent of the Legislature, so that different provisions are consistent, harmonious, and sensible.[49]

[10] First, the procedures for a hearing to show cause why an adjustment should not be made to a county's valuation of a class or subclass of real property are not governed by § 77-5016(4). Under Neb. Rev. Stat. § 77-5013 (Cum. Supp. 2016), TERC has exclusive jurisdiction over appeals and petitions regarding matters within its jurisdiction.[50] Section 77-5016 specifically refers to those types of hearings and sets out the procedural and evidentiary requirements for them. But a show cause hearing to determine the validity of an adjustment does not arise from a petition or appeal. Instead, it is part of TERC's equalization procedures pursuant to Neb. Rev. Stat. § 77-5022 et seq. (Reissue 2009 & Cum. Supp. 2016).

Under § 77-5022, TERC is required to "annually equalize the assessed value . . . of all real property as submitted by the county assessors on the abstracts of assessments." Section 77-5023(1) grants TERC the power to increase or decrease the value of a class or subclass of real property in any county or taxing authority or of real property valued by the state so that all classes or subclasses of real property in all counties fall within an acceptable range. Finally, § 77-5026 requires TERC to provide notice to the counties of any undervalued or overvalued class or subclass of real property and the right to request a hearing to contest TERC's determination. None of these statutes set forth evidentiary requirements for the process of changing valuations.

---

[48] *In re Interest of Nizigiyimana R.*, 295 Neb. 324, 889 N.W.2d 362 (2016).

[49] *In re Interest of Tyrone K.*, 295 Neb. 193, 887 N.W.2d 489 (2016).

[50] See Neb. Rev. Stat. § 77-5007 (Cum. Supp. 2016).

- 767 -

Nebraska Supreme Court Advance Sheets
296 Nebraska Reports
COUNTY OF WEBSTER v. NEBRASKA TAX EQUAL. & REV. COMM.
Cite as 296 Neb. 751

[11] Second, TERC correctly argues that § 77-5027(3) does not require the Administrator to set out every property sale that the assessment division has included in its statistical analyses. It merely requires that the Administrator's annual report and opinion contain statistical and narrative reports sufficient to inform TERC of the level of value and the quality of assessments for the classes and subclasses of property within a county. If the Legislature had intended the reports to include this information, it would have specified that requirement.

Equally important, the reporting requirements and equalization procedures that we have set out above illustrate that including the data for every property sale is not a necessary requirement for TERC to rely on the Administrator's reports. To recap, each county assessor must inform the assessment division of the real property transfers in the county and classify those properties by class and subclass. The assessment division then provides all county assessors with biannual rosters of the individual property transactions in the sales file, by county and by class and subclass of property. If an assessor disagrees with the inclusion of a property in the roster, it can request more information from the assessment division and file a protest.

Similarly, the assessment division must notify an assessor if it disagrees with the assessor's disqualification or adjustment of a property sale in the assessor's annual abstracts. The assessor can then file a protest if he or she disagrees with the division's inclusion, exclusion, adjustment, or failure to adjust a property sale.

Additionally, upon request, the assessment division must provide the sales file database to TERC. So if TERC has concerns about the report, it has access to the same sale files information that a county assessor does. Another check against mistakes exists in the show cause hearing itself. That is, the Legislature has authorized county representatives to appear before TERC to show why it should not rely on the Administrator's reports.

- 768 -

Nebraska Supreme Court Advance Sheets
296 Nebraska Reports
COUNTY OF WEBSTER v. NEBRASKA TAX EQUAL. & REV. COMM.
Cite as 296 Neb. 751

[12] These procedural requirements ensure that a property is not included in the sales file without an opportunity for a county assessor to correct a perceived mistake.[51] Additionally, the county assessor appeared to know which properties that the assessment division had incorporated from other counties, because she argued that one of the sales was not comparable to grassland in Webster County. To require the assessment division to essentially restate the sales rosters in its annual reports to TERC would be unnecessarily duplicative and costly. Whether the Administrator's report should include that information is a decision for the Legislature to make, and it has chosen not to do so. We conclude that the Administrator's annual narrative and statistical reports are sufficient competent evidence to support TERC's equalization orders without including the sales file information for each real property transaction.

### County Assessor Failed to Demonstrate That Property Assessment Division Incorporated Property Sales From Other Counties That Were Not Comparable

Webster County argues that "at least some of the sales" from other counties used by the assessment division were not geographically comparable to grassland in Webster County.[52] However, the record indicates that it disputed only the one grassland property in Nuckolls County as not comparable.

[13] If necessary to determine the level of value and quality of assessment in a county, the Administrator may use sales of comparable real property in market areas similar to the county or area in question or from another county as indicators of the level of value and the quality of assessment in a county.[53]

[14] Webster County correctly argues that a comparable real property is one that is "similar to the property being assessed

––––––––––––

[51] § 77-1327.

[52] Brief for appellant at 12.

[53] § 77-5027(5).

- 769 -

Nebraska Supreme Court Advance Sheets
296 Nebraska Reports
COUNTY OF WEBSTER v. NEBRASKA TAX EQUAL. & REV. COMM.
Cite as 296 Neb. 751

in significant physical, functional, and location characteristics and in [its] contribution to value."[54] But the county assessor failed to show that any sales the assessment division incorporated from other counties were not comparable to grassland property in Webster County.

[15] As explained, under § 77-5026, a hearing arises from a TERC order to show cause why an assessment adjustment should not be made to a class or subclass of property. Because the Administrator's reports are sufficient competent evidence to support a change in valuation,[55] § 77-5026 requires a county to demonstrate that TERC should not rely on the reports. This burden is consistent with a county assessor's burden to demonstrate to the Tax Commissioner that a sales roster for the county should be adjusted.

The record shows that the Administrator used four borrowed grassland sales: two from Franklin County and two from Nuckolls County. The Administrator also used two sales within Webster County which the assessor had previously deemed not comparable because the use of the land had substantially changed from grassland to dry cropland.

The assessor testified that the Franklin County sales were comparable to Webster County, but that the Nuckolls County sales were not comparable, because Nuckolls County receives more rainfall than Webster County. However, Webster County provided no evidence to support the assessor's belief that Nuckolls County received more rainfall. Further, the assessor also testified that she "didn't really have a problem" with the Nuckolls County sales. In fact, she incorporated two property sales from Nuckolls County for her own analysis.

At the show cause hearing, the county assessor admitted that her dispute with the Administrator's reports involved three property sales: a parcel that contained tree cover in Nuckolls County and two parcels of grassland from Webster County that the assessor had disqualified as being substantially changed.

---

[54] Neb. Rev. Stat. § 77-1371 (Cum. Supp. 2016).

[55] See § 77-5027(3) and (4).

- 770 -

Nebraska Supreme Court Advance Sheets
296 Nebraska Reports
COUNTY OF WEBSTER v. NEBRASKA TAX EQUAL. & REV. COMM.
Cite as 296 Neb. 751

The assessor agreed that she had not argued with Scott about the division's inclusion of the two sales from Webster County, and Webster County has not raised these property sales on appeal. Because the assessor stipulated as to which property sales she disputed, those were the only disputes properly before TERC. Further, the only disputed property which was raised in Webster County's brief is the one regarding the Nuckolls County parcel with tree cover. As a result, the Nuckolls County property is the only disputed parcel before us on appeal.

As previously mentioned, the disputed sale from Nuckolls County was partially covered with timber. The assessor testified that the parcel was 75-percent grassland and 25-percent timber. For this reason, Webster County argues that the property could not satisfy the 80-percent majority land use standard for property classifications. Webster County also contends that Scott, the division's agricultural land specialist, admitted this property comprised 75-percent grassland and 25-percent timber and that as a result it was not comparable.

The parties have not pointed to a statute or regulation that shows TERC or the assessment division imposes an 80-percent majority land use standard for property classifications. However, because the standard was mentioned in the Administrator's report, at the adjustment hearing, and in TERC's orders, we assume for this appeal that the standard exists. But Webster County's argument that the Nuckolls County parcel did not satisfy the 80-percent land use standard is refuted by the record and the assessment division's regulations.

The assessment division defines grassland as follows:

Grassland is the state and condition of the range based on what it is naturally capable of producing. Grassland includes all types of grasses . . . used for grazing or mowed for hay. . . . Areas of wooded grazing land are classified as grassland not timberland or wasteland. When there are significant areas of trees or timber on a parcel, and it can no longer be grazed, consideration needs to be

given to placing the affected acres in the forestland and timberland category.[56] Consistent with its definition of grassland, the assessment division defines timberland and forestland to be "land which is wooded by nature or humans and consisting of a dense growth of trees and underbrush such that it is not suitable for grazing."[57]

Scott testified that under these regulations, timber cover over grassland is properly classified as grassland, even if this characteristic comprised 25 percent of a parcel. Equally important, she testified that Nuckolls County had reported the sale of this property as an 80-percent grassland sale.

[16] Absent contrary evidence, public officers are presumed to faithfully perform their official duties.[58] So just as we assume that the land use standard exists, we also assume that the county assessor for Nuckolls County properly applied it. The Webster County assessor presented no evidence to show that tree cover rendered 25 percent of the Nuckolls County parcel unusable for grazing. We conclude that Webster County failed to show that the Administrator's reports included property sales that were not comparable to grassland in Webster County.

## CONCLUSION

We conclude that the Administrator's required reports under § 77-1327 are competent evidence to support a TERC equalization order without including the sales file information for each real property transaction. We conclude that at a show cause hearing, a county has the burden to demonstrate that TERC should not rely on the Administrator's reports. Finally, we conclude that Webster County failed to meet that burden. Accordingly, we affirm.

Affirmed.

---

[56] 350 Neb. Admin. Code, ch. 14, § 002.31 (2014).

[57] *Id.*, § 002.29.

[58] *Johnson v. Neth*, 276 Neb. 886, 758 N.W.2d 395 (2008).